*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILSON DELIVARDO DIAZ-LOPEZ,

        Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 353826
Kent Circuit Court
LC No. 19-005381-FC

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury and use of force or coercion), arising out of defendant's sexual assault of his coworker. Defendant admitted to having sex with the victim, but he contended that it was consensual. Defendant was sentenced to 5 to 25 years' imprisonment. Defendant appeals his conviction and sentence. We affirm.

## I. BACKGROUND FACTS

The victim was sixteen years old at the time of the assault, and she had been living in the United States for approximately a year and a half. She resided with a brother and a sister, and her mother lived in Guatemala. She obtained employment as a vegetable packer in early 2019 by providing a false name and age, in part for the purpose of helping her brother and her mother. Defendant, who was approximately twenty-four years old at the time of the assault, worked at the same facility. The victim testified that defendant repeatedly pressured her to enter into a relationship with him, threatened to tell damaging lies to her siblings if she did not respond to his text messages, and professed his love for her. The victim attempted to avoid and rebuff defendant's advances, and she did not want a relationship with defendant.

Defendant engaged in electronic communications with the victim on the night before, and morning of, the May 30, 2019 assault. According to the victim, when she arrived for work at approximately 5:30 a.m. that morning, defendant forced her outside and attempted to force her into a car. The victim testified that she resisted, and defendant forced her into a wooded area where he threw her to the ground and forced his penis into her vagina while holding onto her arms.

-1-

Defendant told the police that the sex was consensual, and that he did not know why the victim began crying and ran away. The victim stated that, after she escaped, she called her siblings and her brother came to pick her up. A compilation of video from the company's surveillance cameras, which depicted activities in the break room and parking lot, was shown to the jury.

The victim's brother called the police, and she was interviewed about four hours after the assault, then taken for a physical examination. A responding officer noticed that the victim had injuries on her hand. The nurse examiner noted that the victim had sustained additional injuries, largely bruising and abrasions to various parts of her body, including to her labia. The victim was referred for therapy, and she eventually disclosed to her therapist that defendant had sexually assaulted her on an earlier occasion, after forcing her into a vehicle at work. Defendant was convicted by a jury and sentenced as described. Additional evidence will be discussed below.

## II. HEARSAY

Defendant challenges his conviction, arguing that he was deprived of a fair trial by the admission of hearsay statements repeating the victim's disclosures of defendant's assault. Defendant argues that almost every prosecution witness provided inadmissible hearsay. Defendant further argues that he received ineffective assistance of counsel because trial counsel failed to object to the inadmissible statements. Defendant moved for a new trial on the same grounds now argued on appeal, and the trial court denied the motion. We likewise disagree with defendant's arguments.

### A. STANDARDS OF REVIEW AND APPLICABLE LAW

"This Court reviews evidentiary decisions for an abuse of discretion," but "an issue concerning the proper construction of a rule of evidence presents a question of law that this Court reviews de novo." *People v Martzke*, 251 Mich App 282, 286; 651 NW2d 490 (2002). However, unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 761-764; 597 NW2d 130 (1999). Reversal is warranted only if plain error resulted in the conviction of an innocent person, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation omitted).

"A trial court may grant a new trial to a criminal defendant on the basis of any ground that would support reversal on appeal, or because it believes that the verdict has resulted in a miscarriage of justice." *People v Jones*, 236 Mich App 396, 404; 600 NW2d 652 (1999), citing MCR 6.431(B). This Court reviews for an abuse of discretion the trial court's decision whether to grant a new trial. *Id*. The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007), citing MRE 801(c). "It is generally inadmissible unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence." *Id*., citing MRE 802.

## B. THE VICTIM'S SIBLINGS

The victim testified that she phoned her siblings when she emerged from the woods after the assault. The victim's sister testified that the victim was "nervous" and "crying," and "couldn't talk very well because she was scared" while stating that defendant had pulled her from the parking lot to the woods and "abused her sexually." The sister estimated that the conversation lasted five minutes, and explained that the victim could not provide more details "because she couldn't really talk because she was trembling and scared." The victim's brother testified that he spoke to the victim on the phone at approximately 8:00 a.m., after the victim and her sister both left him messages at 5:40 a.m. asking him to call the victim. The brother described the victim as "crying" when he called, and still "crying," or "practically like in shock" to where "[s]he couldn't talk" because "she was real scared" when he took her home after their call. The brother stated that, on the call, the victim told him that defendant had met her in the parking lot, "pushed her in the woods," and "took her by force" and "abused her sexually" over her protestations. The trial court concluded that the siblings' testimonies were admissible as excited utterances under MRE 803(2).

MRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). "The question is not strictly one of time, but of the possibility for conscious reflection." *Id*. at 551. The statement must therefore relate to the startling event or condition, and the statement must be "made when the witness was still under the influence of an overwhelming emotional condition." *People v Straight*, 430 Mich 418, 424-425; 424 NW2d 257 (1988). "Few could quarrel with the conclusion that a sexual assault is a startling event." *Id*. at 425.

The victim's statement to her sister was clearly made immediately after the assault. The victim's sister's description of the victim as "crying," "nervous," and having difficulty talking "because she was trembling and scared" when she spoke of the assault, was ample evidence that the victim was still under the influence of overwhelming emotions at the time. Although the victim's statement to her brother was made a couple of hours later, that delay is not dispositive under the circumstances. The victim's brother's description of the victim as still "crying," "like in shock," and "real scared," was evidence that she remained under the influence of overwhelming emotions at the time she told him about the assault. For these reasons, the challenged testimony from the victim's siblings was not erroneously admitted.

## C. POLICE OFFICERS

Again, the victim's brother testified that, when he took the victim home and called the police, the victim was still "crying," "real scared," "practically like in shock" and "couldn't talk." Police Officer David Thompson testified that he arrived to speak with the victim roughly two hours after the brother spoke with the victim. He found the victim "visibly distraught" as she told him that she went to a place of employment to get a key from her brother when she met defendant in the parking lot, who pushed her into the woods and onto the ground where he removed her pants

and penetrated her vagina with his penis despite her resistance and eventual escape. Although the victim's statements to Officer Thompson were several hours after the assault, the evidence continues to reflect that the victim was still under the influence of the overwhelming emotional condition of the sexual assault. Therefore, Officer Thompson's description of what the victim told her later on the morning of the assault did not plainly fall outside the hearsay exception for excited utterances.

Detective Emily Cutright testified that she first interviewed the victim on the day after the assault, and that the victim was trembling and otherwise upset when telling her that she was hoping to collect a key from her brother when defendant, whom she knew from social media, met her at the car, then forced her into the woods and sexually assaulted her. Cutright further testified that she examined other evidence before speaking to the victim a second time on the day after the assault, when the specifics of the assault were not discussed, but that, three days later, the victim provided her with such additional details as that defendant threw her to the ground in the woods, and that she had tried to push him off but was not able to run away until he stopped. Police Officer Ricky Urena testified that he assisted Detective Cutright as an interpreter in speaking with the victim during the third interview, and he relayed the victim's statement about how defendant was a coworker who had sexually assaulted her by forcing her into the woods and forcing his penis into her vagina. The victim's statements the day after the assault may fall within the hearsay exception for excited utterances, but it is difficult to say whether her statements several days later would still fall within the exception. The trial court concluded that these statements were not hearsay because they were provided to establish a chronology rather than to prove the truth of the matter asserted. However, we find that reasoning doubtful, because these statements were more detailed than necessary to establish a chronology.

The prosecutor argues that the victim's statements admitted through Detective Cutright and Officer Urena were admissible to impeach the victim, because the victim initially lied about why she went to the business. "The credibility of a witness may be attacked by any party, including the party calling the witness." MRE 607. However, it was unnecessary to impeach the victim concerning what brought her to the location in question, because she admitted to the jury that she had initially lied to the police, nurse examiner, and therapist about her employment, and she explained why she had lied. For these reasons, we conclude that at least some of the victim's statements to officers Cutright and Urena were improperly-admitted hearsay.

D. NURSE EXAMINER

Nurse Stephanie Solis examined the victim on the day of the assault, and she testified about the details of the assault that the victim provided her. These statements were clearly admissible as statements made for the purpose of medical treatment and diagnosis under MRE 803(4).

> In order to be admitted under MRE 803(4), a statement must be made for purposes of medical treatment or diagnosis in connection with treatment, and must describe medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source of the injury. Traditionally, further supporting rationale for MRE 803(4) are the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and

treatment of the patient.  [*People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992).]

In this case, it is apparent that the victim's statements to the nurse examiner were for medical purposes because the examination took place on the day of the assault, and the examination properly included taking a history from the patient.  "Particularly in cases of sexual assault . . . a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment."  *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011).

## E.  THERAPIST

Defendant further argues that the testimony of the victim's therapist about the assault should not have been admitted.  On direct examination, the therapist recounted some general details of the assault, including the victim having identified her assailant as "Wilson" and that he "was a coworker."  The therapist also recounted that the same person had assaulted the victim on a previous occasion, although defendant seemingly raises no specific challenge to that statement.  However, the therapist did not describe any other details of the assault until asked to do so by defendant on cross-examination.  Otherwise, the therapist descried the victim's demeanor and symptoms, and the fact that the victim had described the assault in a consistent manner since the beginning of therapy.

Defendant correctly observes that statements made to psychologists are generally regarded as less reliable than statements to physicians, for purposes of MRE 803(4).  *People v LaLone*, 432 Mich 103, 114; 437 NW2d 611 (1989).  However, our Supreme Court later suggested that statements made in the course of psychological *treatment* resulting from a medical diagnosis might be deemed more reliable.  *Meeboer*, 439 Mich at 329.  Furthermore, even if statements to psychologists may generally be less reliable than statements to physicians, that fact may not be dispositive in light of the totality of the circumstances.  *Id*. at 324-327.  In particular, corroborating physical evidence of an assault and circumstances showing a lack of motive to fabricate may be relevant.  *Id*. at 324-326.

Under the circumstances, it is manifestly apparent that the victim was seeking treatment for her trauma of her own accord and for the purpose of healing, rather than undergoing an examination for the benefit of law enforcement, so she had every reason to be truthful with the therapist.  Furthermore, there was physical evidence that the victim had been assaulted; and defendant admitted to having sex with the victim, claiming that he did so with her consent.  Although identifying defendant by name may not have been strictly necessary, identifying an assailant as having been a coworker and as having committed a previous assault both have obvious ramifications to a person's feelings of safety, and a general description of the nature of the assault would have obvious importance to a person's treatment.  We conclude that, other than specifying defendant's name, the statements made by the therapist on direct examination about what the victim disclosed during therapy are sufficiently reliable and sufficiently related to seeking medical treatment to fall under MRE 803(4).

-5-

## F. HARMLESS ERROR

Defendant is correct that some inadmissible hearsay evidence was admitted. Nevertheless, an evidentiary error must be considered in context, and it "is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation omitted). In this case, the trial court stated, "Regardless of the admissibility of the statements, . . . there is no evidence that the outcome of the trial would have been any different had the statements not been admitted." We agree that the inadmissible hearsay testimony from Detective Cutright, Officer Urena, and the therapist did not likely affect the outcome of trial.

"In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful." *People v Gursky*, 486 Mich 596, 621-621; 786 NW2d 579 (2010). However, this was not strictly a credibility contest. See *id*. at 624. As discussed, defendant admitted to having sex with the victim, and there was objective medical evidence that the victim had been assaulted and injured. The therapist's mention of defendant's name is clearly harmless because the issue in this case was consent, not identity. The statements from Officers Cutright and Urena were essentially cumulative, which is more likely to be harmful in a pure credibility contest and less likely to be harmful where, as here, the victim's statements were corroborated and the victim was available for cross-examination. *People v Douglas*, 496 Mich 557, 580-581; 852 NW2d 587 (2014). Accordingly, we conclude that the improper hearsay accounts of defendant's assault on the victim neither resulted in the conviction of an innocent person, nor cast doubt upon "the fairness, integrity, or public reputation of judicial proceedings." *Carines*, 460 Mich at 763-764 (quotation omitted). The trial court did not abuse its discretion by denying defendant's motion for a new trial insofar as it was based on the admission of hearsay.

## III. ASSISTANCE OF COUNSEL

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation omitted). Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant argues that his trial attorney was ineffective for failing to object to the hearsay evidence discussed above. To the extent the evidence was not inadmissible hearsay, counsel could not be faulted for failing to raise a meritless objection. *Ericksen*, 288 Mich App at 201. Because the inadmissible hearsay was harmless, counsel's failure to object could not have affected the

outcome of the proceedings. *Joran*, 275 Mich App at 667. Furthermore, defense counsel's argument to the jury relied in part on portraying the victim as not credible due to the lies she initially told about where she worked, why she was there that day, and how she came to know defendant. In other words, defense counsel based crucial argument on the testimony, including the now-challenged hearsay, that the victim repeatedly offered falsehoods, along with the undisputed fact that intercourse occurred in the woods. Trial counsel's strategy relied, in part, on exploiting all the testimony attributing false statements to the victim, rather than attempting to exclude any of it on hearsay grounds. Declining to raise objections can often be consistent with sound trial strategy, which a reviewing court should not second-guess with the benefit of hindsight. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Further, the trial court stated that, "due to defendant admitting to certain acts, this court finds no probability that objections would have resulted in a different outcome." As discussed above, the unexcepted hearsay was cumulative to properly admitted evidence. For that reason, and because there was physical evidence of injuries supporting the victim's account of suffering a sexual assault, it was not probable that admission of certain hearsay affected the outcome of the trial. The trial court did not abuse its discretion by denying defendant's motion for a new trial based on the ineffective assistance of counsel.

## IV. SCORING OF OFFENSE VARIABLES

Defendant challenges his sentence, arguing that the trial court improperly scored two offense variables (OVs). Specifically, defendant argues that the trial court improperly assessed 10 points for OV 10 solely on the basis of the victim's age, and the trial court improperly assessed 25 points for OV 13 because there was no evidence he committed more than one other uncharged crime against a person. Defendant moved for resentencing in the trial court, and the trial court denied defendant's motion. We likewise disagree with defendant's challenges.

## A. STANDARDS OF REVIEW AND APPLICABLE LAW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Decisions on motions for resentencing are reviewed for an abuse of discretion. *People v Puckett*, 178 Mich App 224, 227; 443 NW2d 470 (1989).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "[W]hen a trial court sentences a defendant in reliance upon an inaccurate guidelines range, it does so in reliance upon inaccurate information." *Id*. at 89 n 7. The court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The court "may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence

investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation omitted).

## B. OV 10

Under OV 10, the trial court should assess 10 points where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability." MCL 777.40(2). "Exploit" means to "manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

Defendant argues that the trial court could only have assessed points under OV 10 on the basis of the victim's age, pointing out that they were merely coworkers and he had no authority over her, and contending that, in any event, he did not know the victim's real age. Defendant further argues that his threats to the victim's family are not an enumerated basis for assessing points under MCL 777.40(1)(b). However, the evidence shows that defendant threatened *the victim* with the prospect of telling lies to her family. Furthermore, because the victim was a minor and had a poor understanding of English, she was highly reliant upon her family, so threats to her family for the purpose of controlling her would implicate exploiting her domestic relationship and youthfulness. The evidence showed that defendant successfully isolated, controlled, and repeatedly assaulted the victim through his threats. He kept the victim from disclosing his abuse to her family and deprived her of the support and guidance necessary to protect herself. Therefore, the evidence indicated that defendant used emotional and physical domination through fear caused by threats and actions in order to isolate, control, and manipulate the youthful defendant, resulting in the sexual assault. OV 10 was properly assessed at 10 points.

## C. OV 13

Under OV 13, the trial court should assess 25 points where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The crimes to be considered include "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Defendant argues that, at most, there were only two crimes against a person that could be attributed to him in the previous five years. Defendant acknowledges that the sentencing offense, of CSC-I, was one crime against a person. He further acknowledges that the victim testified that a second, uncharged, sexual assault took place, which could constitute a second crime against a person. The trial court reasoned that OV 13 was assessed properly because "defendant committed two separate offenses against the victim and assaulted her once prior to the incident, leading to this conviction." The trial court further noted that the presentence investigation report was

"unchallenged,"[1] and the court "relied on its contents." At the posttrial hearing, the trial court explained that it believed defendant's acts of trying to force the victim into a car, asporting her into the woods, and threatening her family with harm if she were to tell anybody about the assault would each constitute a felonious crime against a person.

The felony of kidnapping includes when a person "knowingly restrains another person with the intent to . . . engage in criminal sexual penetration or criminal sexual contact with that person." MCL 750.349(1)(c). For this purpose, to restrain is "to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority." MCL 750.349(2). Such "restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." *Id*. In this case, as the trial court noted in the posttrial hearing, defendant twice forced the victim to a vehicle in the parking lot, and also forced her into the woods, in order to sexually assault her. The trial court properly assessed 25 points for OV 13 in light of the evidence of defendant having committed two kidnappings along with two sexual assaults.

For these reasons, the trial court did not abuse its discretion by denying defendant's motion for resentencing.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[1] At sentencing, defendant did not challenge the contents of the PSIR and declined to allocute.